**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

MAYA MANSHIP, individually and on behalf of all others similarly situated,

          Plaintiff,

v.

TD BANK, N.A.,

          Defendant.

**Civil Action No.** 1:20-CV-329 (GTS/DJS)

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Maya Manship ("Plaintiff"), by her undersigned attorneys, brings this class action individually and on behalf of a class of similarly situated New York residents against Defendant TD Bank, N.A., ("TD Bank" or "Defendant").

## I. INTRODUCTION

1. This case arises out of TD Bank's policy and practice of charging its New York customers a fee to receive their account billing statements ("Account Statements") in paper form via United States mail.

2. Account Statements serve a critical consumer protection function, providing a record of consumers' transactions (including setting forth fees billed and charged to them such as the paper statement fee at issue in this action) and enabling the consumer to check for unauthorized charges or errors.

3. In 2010, the New York legislature enacted a statute, codified at New York General Business Law ("GBL") § 399-zzz, that made it a deceptive act and practice for a company to charge a fee to customers in order to receive their Account Statements in paper form via United States mail. As stated in the bill's sponsor memo ("Sponsor Memo"): "The purpose of this bill is to prohibit businesses from imposing an additional rate or fee on the account of a consider [sic] who chooses to receive paper billing statements or pay by United States mail."

4. The Sponsor Memo further justified the need for the bill:

[P]aper billing and payment fees unfairly impact consumers that do not have Internet access in their homes, as well as those that are uncomfortable using the Internet, including many senior citizens and those concerned about personal privacy. Paper billing and payment fees disproportionately affect low-income consumers, who are less likely to have access to the Internet. Furthermore, such policies impose an additional burden on those customers who choose to file their billing statements for later reference, as such customers will be forced to bear the cost of printing electronic billing statements on their home printer.

1

5. Consumers must have the right to receive Account Statements in the manner that works for them.

6. N.Y. GBL § 399-zzz prohibits businesses, including, for example, banks from imposing a fee on their customers in connection with receiving Account Statements.

7. Therefore, N.Y. GBL § 399-zzz prohibits TD Bank's conduct, and thus TD Bank's conduct constitutes a deceptive act and practice under N.Y. GBL § 349.

## II. JURISDICTION AND VENUE

8. This Court has original jurisdiction over this suit pursuant to 28 U.S.C. § 1332(d). Plaintiff's claims and the claims of the other members of the Class exceed $5 million, exclusive of interest and costs, the members of the Class are citizens of New York, and Defendant is a citizen of New Jersey.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a significant part of the events, acts and omissions giving rise to this action occurred in this District.

10. This Court has personal jurisdiction over Defendant because Defendant operates numerous branches in this District, Defendant does business with Plaintiff and members of the Class in this District, and Defendant's conduct giving rise to this lawsuit includes charging Plaintiff and members of the Class a fee for receiving their Account Statements via the United States mail in this District.

## III. PARTIES

11. Plaintiff Maya Manship is a citizen of New York, residing in Rensselaer County, NY. Plaintiff Manship has maintained a checking account with TD Bank for which she receives a paper Account Statement in the mail each month. The Account Statement reflects all the debits and credits to her account over the statement period, including, without limitation, her electronic

deposits, her electronic payments, and checks that she pays. The Account Statement also sets out the fees that TD Bank charges her. Specifically, her monthly Account Statement includes a $1 charge for a "PAPER STATEMENT FEE," the charge that TD Bank imposes on her for receiving her monthly Account Statement in paper form, and a separate, $5.99 "MAINTENANCE FEE." Plaintiff Manship pays these fees to TD Bank via debits to her account.

12. Defendant TD Bank, N.A. is a federally chartered national banking association with its principal place of business in Cherry Hill, New Jersey.

## IV. FACTUAL ALLEGATIONS

### A. The Importance of Paper Account Statements

13. Account Statements serve important purposes for consumers. Among other things, Account Statements:

    (a) Provide a record of consumers' transactions,

    (b) Enable consumers to check for unauthorized charges and/or errors,

    (c) Disclose fees banks charge consumers,

    (d) Allow consumers to ensure that they receive proper credit for items returned or disputed,

    (e) Assist consumers to keep track of their finances, and

    (f) Provide a permanent record of the consumer's income, expenses, transactions and fees.

Account Statements are also used in banks' consideration of whether consumers qualify for mortgages or other forms of credit and are important when preparing tax returns and looking at records of bill payments.

14. For all of these reasons, it is important that consumers are able to receive statements in the form that is most convenient to them and that ensures consumers' access to these critical records.

### B. Ensuring Access to Account Statements: Electronic versus Paper

15. In recent years, banks and other companies have pushed strongly for consumers to "go paperless," *i.e.*, forego receiving paper Account Statements and, instead, accept paperless, electronic delivery.

16. Millions of Americans, however, lack meaningful access to broadband Internet at home, and even computer/Internet-savvy consumers frequently prefer to receive paper Account Statements.

17. According to a December 2015 report by the Pew Research Center:

   (a) Over half of consumers with less than a high school education do not have home broadband connections;

   (b) Lower-income households lack access to broadband Internet at nearly twice the rate of the general population; and

   (c) About half of Hispanics and African Americans do not have access to broadband Internet at home.

18. Merely because a consumer has a mobile device or even has accessed an account through that device does not mean that the consumer has regular Internet access or that the consumer is comfortable monitoring the account online or on a mobile device. Important information in the Account Statement could be missed, particularly if in fine print, when read on a small mobile device. And receiving billing and Account Statement availability notifications via email can be more easily overlooked if the user's primary email access is through a mobile device.

Moreover, where consumers' Internet access is predominantly limited to mobile devices, that can present special issues for low-income families, because data is expensive and low-income consumers may be reluctant to use their scarce monthly data allotments to access their Account Statements.

19. Even those consumers who have regular, convenient access to the Internet and even those who may be computer-savvy often prefer to receive paper Account Statements.

20. Consumers often face a barrage of spam email solicitations that can bury important messages like Account Statements.

21. Further, many consumers find paper Account Statements are easier to file in a safe place not subject to loss from crashed hard drives, data loss when changing computers and devices, or other forms of digital data loss. Paper Account Statements can be filed in a folder and easily recalled even years later, and even long after the consumer closes an account.

22. With frequent data breaches being widely publicized, many consumers are also rightfully concerned and reluctant to access their sensitive financial accounts online.

23. Bottom line, consumers should not be forced to access accounts electronically if they do not want to do so, or if doing so limits their access to their important account information.

C. **New York's Statutory Prohibition of Paper Account Statement Fees**

24. In 2010, the New York legislature explicitly recognized the need for consumers to have access to their Account Statements in paper form without additional expense, enacting a bill codified at N.Y. GBL § 399-zzz, and effective April 18, 2011.

25. N.Y. GBL § 399-zzz provides, in relevant part:

(1) Subject to federal law and regulation, no person, partnership, corporation, association, or other business entity shall charge a consumer an additional rate or fee or a differential in the rate or fee associated with payment on an account when the consumer chooses to pay by United States mail or receive a paper

5

billing statement.  This subdivision shall not be construed to prohibit a person, partnership, corporation association, or other business entity from offering consumers a credit or other incentive to elect a specific payment or billing option.

(2) Every violation of this section shall be deemed a deceptive act and practice subject to enforcement under article twenty-two-A of this chapter.

26. Article 22-A, as referenced in N.Y. GBL § 399-zzz, contains New York's "Consumer Protection from Deceptive Acts and Practices" statutes, including, without limitation, N.Y. GBL § 349, which makes deceptive acts and practices unlawful.

27. State Senator Peralta sponsored the legislation, setting out its purpose as "to prohibit businesses from imposing an additional rate or fee on the account of a cons[umer] who chooses to receive paper billing statements or pay by United States mail."

28. In Senator Peralta's sponsor memorandum, he wrote that the bill would prohibit "any person, partnership, corporation, association or other business entity from charging a consumer an additional rate or fee associated with payment on an account when the consumer selects to … receive a paper billing statement."

29. In justifying the need for the bill, Senator Peralta wrote:

In recent months, there have been instances of major companies proposing to impose an additional fee on the accounts of customers that choose to receive a paper bill….  Such paper billing and payment fees unfairly impact those consumers that do not have Internet access in their homes, as well as, those that are uncomfortable using the Internet, including many senior citizens and those concerned about personal privacy.

Paper billing and payment fees disproportionately affect low-income consumers who are less likely to have access to the Internet.  Furthermore, such policies impose an additional burden on those customers who choose to file their billing statements for later reference, as such customers will be forced to bear the cost of printing electronic billing statements on their home printer.

While the environmental benefits of electronic billing and payment are clear, a better approach to reducing paper use in this area is available.  Several major companies have successfully reduced paper usage by offering customers an incentive to switch to electronic billing and payment.

6

30. In a July 12, 2010 letter to Counsel to the Governor concerning the legislation, the Consumer Protection Board echoed Senator Peralta's sponsor memo, and noted:

> [Although companies save money and provide environmental benefits by issuing electronic statements,] account billing and payment via the United States mail is a long-standing tradition to which many consumers respond to. Electronic mail does not have the same impact with some consumers. More importantly, account billing is a cost of doing business that has been built into a service or product cost. Thus, if a company wants to move its customers to electronic billing, it should do so with incentive based tactics, as this measure provides, and not a broad sweeping fee imposed upon consumers as a penalty for those who prefer or are limited to doing business in the traditional receipt of paper bills.
>
> Accordingly, the [Consumer Protection Board] ***strongly supports*** this legislation to protect consumers who prefer or are limited to receiving their monthly billing statements via paper billing received via the traditional United States Postal mail system.

(emphasis in original).

31. The bill was ultimately passed and makes each violation of N.Y. GBL § 399-zzz a deceptive act and practice subject to enforcement under the N.Y. GBL.

**D.  Related Federal Laws and Regulations**

32. N.Y. GBL § 399-zzz is, by its express terms, subject to federal laws and regulation.

33. The National Bank Act ("NBA") authorizes national banks to receive deposits and perform "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24.

34. The Office of the Comptroller of the Currency ("OCC") has the regulatory oversight of national banks' exercise of these federally authorized powers, and Congress delegated to the OCC authority to determine the scope of these incidental powers. *See* 12 U.S.C. § 93a.

35. The OCC's regulations recognize that "national bank[s] may receive deposits and engage in any activity incidental to receiving deposits … subject to … limitations prescribed by the [OCC] and any other applicable Federal law." 12 C.F.R. § 7.4000. The OCC regulations

7

further state that "A national bank may charge its customers non-interest charges and fees, including deposit account service charges." 12 C.F.R. § 7.4002(a).

    36.    But the OCC regulations provide that:

> The establishment of non-interest charges and fees … are business decisions to be made by each bank, in its discretion, according to ***sound banking judgment*** and ***safe and sound banking principles***. A national bank establishes non-interest charges and fees in accordance with safe and sound banking principles if the bank employs a decision-making process through which it considers the following factors, among others: (i) The cost incurred by the bank in providing the service; (ii) The deterrence of misuse by customers of banking services; (iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and (iv) The maintenance of the safety and soundness of the institution.

*Id.* § 7.4002(b) (emphasis added).

    37.    Thus, although the OCC regulations generally provide national banks the authority under the NBA to "charge its customers non-interest charges and fees, including deposit service charges," 12 C.F.R. § 7.4002(a), the OCC has limited those charges and fees to those that require "sound banking judgment and safe and sound banking principles." 12 C.F.R. § 7.4002(b). Such limitation appropriately complies with the Supreme Court's multiple comments that state laws of general application are not preempted by the NBA. *See*, *e.g.*, *Cuomo v. Clearinghouse Ass'n.*, 557 U.S. 519 (2009); *Watters v. Wachovia Bank*, 550 U.S. 1 (2007).

    38.    N.Y. GBL § 399-zzz is a law of "general application." It imposes no special duty on banks (nationally chartered institutions or otherwise). Its mandates apply equally to banks and all other businesses. This is for good reason: the conduct of printing and mailing an Account Statement is not specific to banking (many types of businesses generate Account Statements) and neither requires the exercise of banking judgment nor application of banking principals. Indeed, N.Y. GBL § 399-zzz does not speak to, *inter alia*, (1) the content or format of Account Statements, or (2) how paper Account Statement fees must be disclosed to consumers. Rather, N.Y. GBL §

8

399-zzz establishes a prohibition of a specific type of fee charged by all types of businesses, the definition of a law of "general application."

### E. TD Bank's Paper Account Statement Fee

39. TD Bank charges consumers with various types of TD Bank accounts a fee to receive their Account Statement in paper form via the U.S. mail.

40. TD Bank Account Statements set forth the consumers' electronic deposits and payments, checks paid, daily balances, and the fees that TD Bank charges the consumer, including the TD Bank fee for consumers' receipt of paper Account Statements.

41. TD Bank's Account Statements also reflect the payment of the fees that TD Bank charges consumers via a debited adjustment to their balance.

42. TD Bank's Account Statements thus reflect both fee charges and payments, just as other types of Account Statements (*e.g.*, credit card statements which also reflect that a consumer may be charged a fee and will reflect payments, regardless whether made prior to or after the statement issues).

43. By setting out the fees that TD Bank charges consumers, the Account Statements that TD Bank issues constitute "paper billing statement[s]" under N.Y. GBL § 399-zzz.

44. Therefore, TD Bank's fee charged to consumers for receiving their Account Statements in paper form violates N.Y. GBL § 399-zzz, and each such fee charge constitutes a separate and independent deceptive act and practice that violates N.Y. GBL § 349.

## V. CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action individual and on behalf of the following class of New York residents under Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure:

9

>All New York residents who were charged a fee to receive their Account Statements in paper form by TD Bank during the time period beginning three years before the date of the filing of this complaint, and ending on the earlier of the date the class list is prepared or the date when TD Bank ceases charging consumers a fee to receive their Account Statements in paper form ("the Class).

46. The members of the Class are so numerous that joinder of all members is impracticable. There are thousands of members of the Class. The exact number of Class members and their identities are known to TD Bank (and can be determined through discovery).

47. There are numerous questions of law and fact common to each Class member and that predominate in this action, including, but not limited to:

>(a) Whether TD Bank charged customers a monthly fee to receive their Account Statements in paper form; and,
>
>(b) Whether such fees violated N.Y. GBL § 399-zzz.

48. Plaintiff's interests are typical of, and not antagonistic to, those of other members of the Class, such that Plaintiff can fairly and adequately represent and protect their interests.

49. Plaintiff is represented by counsel who are competent and experienced in the prosecution of consumer and class action litigation.

50. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

51. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

52. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment of this action as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum

simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender. The Class is readily definable and a class action will eliminate the possibility of repetitious litigation.

53. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate claims such as those asserted in this Complaint. This class action, which is limited to claims by New York residents under New York law, presents no difficulties of management that would preclude its maintenance as a class action.

## VI.  CAUSE OF ACTION

**VIOLATION OF THE NEW YORK GBL § 349**
**(On Behalf of the Class)**

54. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though set forth herein.

55. TD Bank is a national banking association, thereby constituting a "person, partnership, corporation, association, or other business entity" under N.Y. GBL § 399-zzz.

56. TD Bank's Account Statements are "billing statements" under N.Y. GBL § 399-zzz because they set forth the fees and charges TD Bank assesses on consumers.

57. TD Bank states its "Paper Statement Fee" is "an additional … fee … when the consumer chooses to … receive a paper billing statement."

58. Therefore, when TD Bank charges consumers to receive their Account Statement in paper form, TD Bank violates N.Y. GBL § 399-zzz and commits a deceptive act and practice violative of N.Y. GBL § 349.

59. TD Bank's deceptive acts and practices as set forth herein constitute "conduct of any business, trade or commerce, or in the furnishing of any service" in New York.

60. Plaintiff and members of the Class are "person[s] who ha[ve] been injured by reason of" TD Bank's deceptive acts and practices. Indeed, Plaintiff and members of the Class have been charged fees to receive their Account Statements in paper form, *i.e.*, they have been charged TD Bank's "Paper Statement Fee." TD Bank has also debited payment of these fees from Plaintiff's and Class members' accounts.

61. Therefore, Plaintiff, on behalf of herself and the Class, seeks to enjoin TD Bank's unlawful conduct, and seeks to recover actual damages at least equal to all Paper Statement Fees paid by Plaintiff and all members of the Class or fifty dollars per each violation, whichever is greater.

62. Moreover, TD Bank has known of N.Y. GBL § 399-zzz and its proscription of charging fees to consumers who receive their Account Statements in paper form by mail for no fewer than 22 months. TD Bank has likewise known that violating N.Y. GBL § 399-zzz means that TD Bank is violating N.Y. GBL § 349 for that same period. As a result, Plaintiff, on behalf of herself and the Class, seeks an order from the Court trebling Plaintiff and the Class's actual damages. Thus, Plaintiff, on behalf of herself and the Class, seeks to recover actual treble damages or fifty dollars per violation, whichever is greater, for the period of time TD Bank knowingly violated N.Y. GBL § 399-zzz and N.Y. GBL § 349.

## VII. **PRAYER FOR RELIEF**

63. WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that the Court:

    a. Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and Appoint Plaintiff as a Class Representative, and Counsel for Plaintiff as Class Counsel;

    b.    Adjudge and decree that Defendant has violated Section 349 of the N.Y. GBL;

    c.    Permanently enjoin Defendant from charging paper statement fees in violation of N.Y. GBL § 349;

    d.    Adjudge and decree that Defendant's violations of N.Y. GBL § 349 was willful and/or knowing;

    e.    Award Plaintiff and the Class damages, including compensatory, exemplary, statutory, incidental, consequential, actual, treble, and punitive, in an amount to be determined at trial;

    f.    Grant Plaintiff and the Class restitution and require Defendant to disgorge its ill-gotten gains;

    g.    Award Plaintiff and the Class their costs and expenses, including attorneys' fees;

    h.    Award prejudgment and post-judgment interest; and

    i.    Award any such other and further relief as may be just and proper.

## VIII. JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(c), Plaintiff demands a trial by jury on all issues so triable.

Dated: March 23, 2020                            Respectfully submitted,

                                                    */s/ Shanon J. Carson*
                                                    Shanon J. Carson, Bar No. 303059
                                                    Patrick F. Madden*
                                                    BERGER MONTAGUE PC
                                                    1818 Market Street, Suite 3600
                                                    Philadelphia, PA 19103
                                                    Tele: (215) 875-3000
                                                    Fax: (215) 875-4604
                                                    Email: scarson@bm.net
                                                    Email: pmadden@bm.net

Joseph Hashmall*
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
T. 612.594.5999
F. 612.584.4470
Email: jhashmall@bm.net

*pro hac vice forthcoming*

*Counsel for Plaintiff and the Proposed Class*