UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MAYA MANSHIP,

                              Plaintiff,

v.                                                          1:20-CV-0329
                                                            (GTS/DJS)

T.D BANK, N.A.,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

BERGER & MONTAGUE, P.C.                          SHANON J. CARSON, ESQ.
  Counsel for Plaintiff                          JOSEPH C. HASHMALL, ESQ.
1818 Market Street, Suite 3600                   PATRICK F. MADDEN, ESQ.
Philadelphia, PA 19103

O'MELVENY & MYERS LLP                            ALLEN BURTON, ESQ.
  Counsel for Defendant                          DANIELLE OAKLEY, ESQ.
7 Times Square
New York, NY 10036

HARRIS, BEACH LAW FIRM PLLC                      JAMES P. NONKES, ESQ.
  Co-counsel for Defendant
99 Garnsey Road
Pittsford, NY 14534

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this putative consumer protection class action filed by

Maya Manship ("Plaintiff") against T.D. Bank, N.A. ("Defendant"), is Defendant's motion to

dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

(Dkt. No. 18.)  For the reasons set forth below, Defendant's motion to dismiss is granted.

I.      **RELEVANT BACKGROUND**

A.      **Summary of Plaintiff's Complaint**

Generally, liberally construed, Plaintiff's Complaint alleges that Defendant charged her (along with all other class members) a $1.00 monthly fee to receive their account statements in paper form ("paper statements") in violation of N.Y. Gen. Bus. Law § 399-zzz (McKinney 2011) ("Section 399-zzz"), which prohibits the charging of paper statement fees in connection with billing statements in certain circumstances.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  Based on these factual allegations, Plaintiff's Complaint claims that Defendant committed a deceptive act and practice under N.Y. Gen. Bus. Law § 349 (McKinney 2014) ("Section 349").  (*Id.*)

B.      **Parties' Briefing on Defendant's Motion to Dismiss**

Generally, in support of its motion to dismiss, Defendant asserts the following three alternative arguments: (1) Plaintiff's claim is preempted by the National Bank Act ("NBA") because deposit-taking powers are reserved exclusively for the federal Office of the Comptroller of the Currency ("OCC"), and Plaintiff's interpretation of Section 399-zzz would prevent Defendant from exercising its federally authorized power to charge non-interest fees; (2) even if Section 399-zzz does not improperly regulate Defendant's ability to assess banking fees, the statute is nevertheless unconstitutional under the First Amendment (as it is applied to Defendant's paper statement fee) because (a) it limits Defendant's communication of fees and pricing to its customers thereby regulating Defendant's speech, and (b) it does not survive intermediate scrutiny in that Section 399-zzz does not "directly advance" any governmental interest, nor is it narrowly tailored to any apparent governmental interest; and (3) even if Plaintiff's claim is not preempted, and even if Section 399-zzz survives First Amendment

2

scrutiny, Plaintiff has failed to plead an actionable claim for relief because (a) she did not plead a violation of Section 399-zzz in that (i) the statute, on its face, does not apply to national banking institutions such as Defendant, (ii) the statute prohibits certain entities from charging a consumer an additional rate or fee "associated with payment on an account when the consumer chooses to . . . receive a paper billing statement" and Plaintiff does not allege a payment on the account at issue, and (iii) the statute's "payment on the account" requirement presumes that there is some outstanding amount due for services distinct from the maintenance of the account, and (b) Plaintiff did not plead a separate violation of Section 349 in that there is nothing deceptive about Defendant's paper statement fee (and Plaintiff does not allege otherwise).  (*See generally* Dkt. No. 18, Attach. 1 [Def.'s Memo. of Law].)

Generally, in opposition to Defendant's motion, Plaintiff asserts the following three arguments: (1) Section 399-zzz is not preempted by the NBA because the New York State legislature acted pursuant to its police powers when it enacted this consumer protection statute that is generally applicable and does not significantly interfere with Defendant's federally authorized powers; (2) Section 399-zzz is constitutional because (a) the statute does not regulate Defendant's speech but its conduct, and (b) Defendant's proffered interpretation of the statute is improper in that (i) one possible interpretation of a statute does not render it unconstitutional and Plaintiff's reading is proper, (ii) Section 399-zzz's legislative history indicates that the statute's purpose was to prevent consumers who receive paper statements from paying extra for those statements, and (iii) even if Section 399-zzz does regulate speech, it survives intermediate scrutiny due to the statute's advancement of a government interest (i.e., protecting consumers) and its narrowly tailored nature (by simultaneously barring the fee for paper statements and

permitting businesses to use other means to incentivize consumers); and (3) Defendant's account statements are "paper billing statements" and thereby, under Section 399-zzz, subject Defendant to liability under Section 349 because (a) Section 399-zzz applies to all businesses, including Defendant, and (b) Defendant's account statements are within the scope of Section 399-zzz in that (i) Defendant's account statements qualify as "billing statements" under the plain meaning of the statute, (ii) Defendant "ascribes undue significance to the term 'associated with payment on an account'" by reading terms into the statute that do not exist, (iii) Defendant's comparison of Section 399-zzz to N.Y. Gen. Bus. Law § 702 ("Section 702") fails due to the fact that Section 702 prohibits only "creditors" from charging fees and Section 399-zzz prohibits all "person[s], corporation[s], association[s], and other business entit[ies]" from charging fees for paper statements, and (iv) the term "billing statement" is a broad term that includes a number of other types of statements other than a "bill for some outstanding amount due for services."  (*See generally* Dkt. No. 22 [Plf.'s Memo. of Law].)

Generally, in reply to Plaintiff's response, Defendant repeats its original arguments, and clarifies them by arguing as follows: (1) Section 399-zzz significantly interferes with Defendant's exercise of its national banking powers by prohibiting it from exercising its authority under 12 C.F.R. § 7.4002 to set non-interest charges and fees, and Defendant's decision to charge a paper fee is clearly a matter of judgment within its federally authorized powers; (2) even if Section 399-zzz does not improperly regulate Defendant's ability to assess banking fees, it unconstitutionally restricts the manner in which Defendant can communicate those fees because (a) the statute restricts the manner in which Defendant may communicate its pricing, and (b) the statute cannot survive intermediate scrutiny in that (i) Plaintiff fails to explain how

4

Section 399-zzz "directly advances" the state government's interest when the statute permits entities to charge for paper statements through "credits," and (ii) the commercial speech unnecessarily burdens Defendant's truthful speech and is therefore not narrowly tailored; and (3) Plaintiff has not alleged facts plausibly suggesting a violation of Section 399-zzz because (a) the mere fact that Plaintiff's checking account statements share some general characteristics of other lists or "bills" does not plausibly suggest that the statute applies to checking account statements, which merely reflect the depositor's account status and activity, (b) Plaintiff fails to identify a "payment on an account" with which Defendant's paper statement fee is associated, (c) the New York State legislature's choice to not use the term "creditor" when drafting Section 399-zzz is inconsequential because the legislature took the definition of creditor from N.Y. Gen. Bus. Law § 701 ("Section 701") and interposed it into Section 399-zzz, and (d) Section 399-zzz does not apply to national banks like Defendant because New York State law makes clear that national banks are treated differently than other banks and businesses and the legislative history clearly indicates that the statute would not apply to national banks.[1]  (*See generally* Dkt. No. 25.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief

---

[1]    The Court notes that Defendant, in accordance with Fed. R. Civ. P. 5.1(a), states that it has provided notice of its as-applied constitutional challenge to the New York State Attorney General.  (Dkt. No. 25, at 7 n.4.)  Specifically, on June 23, 2020, Defendant provided the New York State Attorney General with notice of its argument.  (Dkt. No. 26.)  On September 11, 2020, Jeffrey W. Lang, Deputy Solicitor General, informed the Court of the New York State Attorney General's Office's decision to not participate in this case at this time.  (Dkt. No. 28.) As of the date of this Decision and Order, the Court has not received any other document from the New York State Attorney General's Office.  (*See generally* Docket Sheet.)

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[2]

The Supreme Court has explained that such *fair notice* has the important purpose of

---

[2]       *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

6

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-82 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 550 U.S. at 561-62.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*. at 678, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a

8

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[3]

### B.    Legal Standard Governing Defense of Preemption

The Supreme Court has identified three circumstances in which state law is preempted

under the Supremacy Clause of the United States Constitution.  *English v. Gen. Elec. Co.*, 496

U.S. 72, 78 (1990) (citing U.S. Const. Art. VI, cl. 2).  "First, Congress can define explicitly the

---

[3]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d. Cir. 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

extent to which its enactments [preempt] state law." *English*, 496 U.S. at 78. "Second, in the absence of explicit statutory language, state law is [preempted] where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* at 79. Congressional intent can be inferred from a "'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 [1947]). However, where the zone Congress is said to have preempted "includes areas that have 'been traditionally occupied by the States, 'congressional intent to supersede state laws must be 'clear and manifest.'" *Id.* (quoting *Jones v. Roth Packing Co.*, 430 U.S. 519, 525 [1977]). Third, state law is preempted "to the extent that it actually conflicts with federal law," "where it is impossible for a private party to comply with both state and federal requirements, *see e.g.*, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 [1941]) (internal citation omitted). Additionally, the Court notes that "federal regulations preempt state law with the same force and effect as the federal statutes under which they are promulgated." *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 43 (E.D.N.Y. 2014) ("*In re HSBC*") (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 [1982]).

## III.   ANALYSIS

### A.   Whether Plaintiff's Claim Is Preempted by the NBA

After carefully considering the matter, the Court answers the question in the negative for the reasons stated below.

For more than 200 years, it has been well settled that "federal law [is] supreme over state law with respect to national banking." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 10 (2007) (citing *McCulloch v. Maryland*, 17 U.S. 316 [1819]). Although the NBA "vest[s] in nationally chartered banks enumerated powers and 'all such incidental powers as shall be necessary to carry on the business of banking,' 12 U.S.C. § 24 Seventh," *Watters*, 550 U.S. at 11, the Supreme Court "has made clear that the NBA and OCC regulations do not preempt the field of national bank regulation." *In re HSBC*, 1 F. Supp. 3d at 44 (citing *First Nat'l Bank in St. Louis v. Missouri*, 263 U.S. 640, 656 [1924]). Instead, Congress, through the NBA and OCC, created a "mixed state/federal regime[] in which the Federal Government exercises general oversight while leaving state substantive law in place." *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 530 (2009). Because "[s]tates have a legitimate role in regulating certain banking activity . . . it is often said that we have a 'dual banking system' of federal and state regulation." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005); *Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171, 183 (E.D.N.Y. 2019). Accordingly, the fundamental question courts must decipher is this: "[d]id Congress, in enacting the Federal Statute, intend to exercise its constitutionally delegated authority to set aside the laws of a State?" *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 30 (1996). In other words, preemption is a question of congressional intent. *English*, 496 U.S. at 78-79.

In this case, the Court finds that Section 399-zzz is not preempted by the NBA and accompanying OCC regulations. When evaluating congressional intent, courts "assum[e] that

11

the historic police powers of the States [are] not to be superseded by the Federal Act unless that

was the clear and manifest purpose of Congress."  *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77

(2008) (internal quotation omitted).  However, "[t]he presumption against federal preemption

disappears . . . in fields of regulation that have been substantially occupied by federal authority

for an extended period of time.  Regulation of federally chartered banks is one such area."

*Burke*, 414 F.3d at 314 (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 183 [2d Cir.

2005]).

Although Defendant primarily relies on the Ninth Circuit's decision in *Gutierrez v. Wells*

*Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012), to support its position that Section 399-zzz is

preempted by the NBA, Defendant's reliance is misplaced.  (Dkt. No. 18, Attach. 1, at 11-13;

Dkt. No. 25, at 6-8.)  In particular, Defendant argues that the Ninth Circuit held that the NBA

preempted California's Unfair Competition Law because the bank had the authority to charge

non-interest fees under 12 C.F.R. § 7.4002 (Dkt. No. 25, at 7); however, the Ninth Circuit

actually held that the bank's policy to resequence the posting order of charges and associated

overdraft fees amounted to a pricing decision authorized by federal law.  *Gutierrez*, 704 F.3d at

724-25.  Considering that courts within this circuit have already addressed and distinguished

*Gutierrez*, the Court finds the preemption reasoning from *Gutierrez* inapplicable to the facts of

this case.  *See, e.g.*, *In re HSBC*, 1 F. Supp. 3d at 45-48; *Hymes*, 408 F. Supp. 3d at 196.

Furthermore, the Court notes that it has been unable to locate (nor has Defendant provided) any

OCC guidance or interpretation with respect to paper fee statements.  (*See generally* Dkt. No. 18,

Attach. 1; Dkt. No. 25.)

Given these principles, the Court finds that Defendant has incorrectly framed the OCC as

12

the exclusive authority to *regulate* national banks like Defendant.  (Dkt. No. 18, Attach. 1 at 10-11.)  In fact, the Supreme Court clearly articulates that "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters*, 550 at 11 (citing *Davis v. Elmira Sav. Bank*, 161 U.S. 275, 290 [1896]).  "States are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers." *Watters*, 550 U.S. at 12; *Barnett Bank*, 517 U.S. at 33; 12 U.S.C. § 25b(b) (2010).  Moreover, Congress codified the *Barnett Bank* standard, further undermining Defendant's position.  12 U.S.C. § 25b(b).  Accordingly, for the Court to find that Section 399-zzz is preempted, it must first determine what banking powers are at issue, and "whether state law prevents or significantly interferes with the exercise of these powers." *Hymes*, 408 F. Supp. 3d at 193 (citing *Barnett Bank*, 517 U.S. at 30).

Here, the Court notes that the banking power at issue in Section 399-zzz is Defendant's ability to charge a non-interest fee for its services.  (Dkt. No. 18, Attach. 1 at 10-13.)  Specifically, Section 399-zzz states, "Subject to federal law and regulation, no person, partnership, corporation, association or other business entity shall charge a consumer an additional rate or fee or a differential in the rate or fee associated with payment on an account when the consumer chooses to pay by United States mail or receive a paper billing statement." N.Y. Gen. Bus. Law § 399-zzz(1).  The statute further specifies that it "shall not be construed to prohibit a person, partnership, corporation, association or other business entity from offering consumers a credit or other incentive to elect a specific payment or billing option." *Id.* Meanwhile, the OCC has determined that a national bank "may charge its consumers non-

interest charges and fees," 12 C.F.R. § 7.4002(a), "receive deposits and engage in any activity

incidental to receiving deposits, including issuing evidence of accounts," *id.* at § 7.4007(a), and

"exercise its deposit-taking powers without regard to state law limitations concerning . . .

[c]hecking accounts." *Id.* at § 7.4007(b)(2).[4]  However, "[t]he establishment of non-interest

charges and fees . . . are business decisions to be made by each bank, in its discretion, according

to sound banking judgment and safe and sound banking principles."  *Id.* at § 7.4002(b).

> A national bank establishes non-interest charges and fees in accordance
> with safe and sound banking principles if the bank employs a decision-
> making process through which it considers the following factors, among
> others: (i) The cost incurred by the bank providing the service; (ii) The
> deterrence of misuse by customers of banking services; (iii) The
> enhancement of the competitive position of the bank in accordance with the
> bank's business plan and marketing strategy; and (iv) The maintenance of
> the safety and soundness of the institution.

*Id.*  Therefore, due to the detailed considerations enumerated in 12 C.F.R. § 7.4002(b), the Court

finds that the OCC regulations authorize a national bank to charge "non-interest charges and

fees" only when they relate to "sound banking judgment and safe banking principles."  *Id.*[5]

---

[4]     The Court notes that Defendant's argument that Section 7.4007(a) "expressly grants
Defendant the right to receive deposits and engage in any activity incidental to receiving
deposits, including issuing evidence of accounts" appears for the first time in Defendant's reply
memorandum of law.  (Dkt. No. 25, at 9.)  This Court has discretion to consider such a late-
blossoming argument (to which the non-movant has not had the opportunity to respond), and
chooses not to do so here.  *See Knipe v. Skinner*, 999 F.2d 709, 710-11 (2d Cir. 1993)
("Arguments may not be made for the first time in a reply brief."); *Am. Hotel In'l Grp. Inc., v.
OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (stating that "a district court is
free to disregard argument raised for the first time in reply papers . . ."); *Ruggiero v. Warner-
Lamert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (finding that a district court has discretion to
consider arguments raised for the first time in a party's reply papers).

[5]     Although Defendant is correct that the term "sound banking judgment" does not appear
in Section 7.4002(a), this argument is disingenuous at best; the considerations, including "sound
banking judgment," are clearly listed in Section 7.4002(b).  (Dkt. No. 25, at 8.)  The Court
further disagrees with Defendant's assertion that it is noteworthy that "sound banking judgment"
does not appear in Section 7.4002(a).

Here, Defendant's paper statement fee is distinguishable from non-interest banking fees and charges because it does not pertain to Defendant's banking practices and services.  Liberally construing all reasonable inferences in favor of the non-moving party, the Court finds that Defendant's paper statement fee does not involve a banking practice or service because it does not involve banking concept or principle. Without reaching the question of whether charging an individual a paper statement fee amounts to "sound banking judgment," the Court finds it clear from the language of Section 399-zzz that paper statement fees are not limited to only banking institutions, and that the statute is a rule of general application.  Granted, Defendant argues that Section 399-zzz prohibits it from exercising its authority under 12 C.F.R. § 7.4002 to set non-interest charges and fees, the statute does not prevent or significantly interfere with Defendant's exercise of its powers.  However, there is a lack of guidance from the OCC with respect to paper statement fees, and in any event, Defendant can circumvent the statute by changing its description from a "fee" to a "credit."  (Dkt. No. 18, Attach. 1 at 14.)  By recognizing little practical difference between Defendant's paper statement "fee" and an electronic statement "credit," Section 399-zzz does not significantly interfere with Defendant or its exercise of its powers to charge its customers for a paper statement.

For all of these reasons, the Court finds that Section 399-zzz is not preempted by the NBA or the OCC's regulations of national banks.

**B.     Whether Section 399-zzz Violates Defendant's First Amendment Rights (as the Statute Is Applied Here)**

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 18, Attach. 1, at 17-22; Dkt. No. 25, at 9-12.)  To those reasons, the Court adds the following analysis, which is intended to

supplement, and not supplant, Defendant's reasoning.

### 1.    Whether Section 399-zzz Regulates Speech

Before analyzing whether Section 399-zzz violates Defendant's First Amendment rights (as it is applied here), the Court must first determine whether the statute merely regulates Defendant's conduct or whether the statute also regulates Defendant's speech.

Traditionally, price regulations control the amount that a business can collect. *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1150 (2017) ("*Expressions I*").  As a result, the Supreme Court has reasoned that traditional price regulations control a business' conduct, and that the effect of those price regulations on a business' speech is merely incidental to the primary effect on conduct.  *Expressions I*, 137 S. Ct. at 1150-51.  The Supreme Court has explained that "'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'"  *Id.* (quoting *Rumsfeld v. Forum for Acad. and Inst.'l Rights, Inc.*, 547 U.S. 47, 62 [2006]).  However, the Supreme Court has also ruled that laws which regulate a business's "communication of prices rather than the prices themselves" regulate that business's speech.  *Id.* at 1151.  For example, in *Expressions I*, the Supreme Court ruled a New York statute that prohibited a merchant from imposing a surcharge on credit card transactions did not merely regulate conduct (i.e., prices) but also speech (i.e., the communication of those prices), because

> [a] merchant who wants to charge $10 for cash and $10.30 for credit may not convey that price any way he pleases. He is not free to say '$10, with a 3% credit card surcharge' or '$10, plus $0.30 for credit' because both of those displays identify a single sticker price—$10—that is less than the amount credit card users will be charged. Instead, if the merchant wishes to post a single sticker price, he must display $10.30 as his sticker price.

*Id*.

Here, Plaintiff argues that Section 399-zzz regulates Defendant's conduct, not its speech, because the statute and legislative history clearly state that the statute's purpose is to "prevent consumers who receive paper statements from carrying an increased cost burden associated with receiving paper statements."[6]  (Dkt. No. 22, at 17-18.)  However, construed in its entirety, Section 399-zzz also regulates how businesses can communicate their fees (indeed arguably more so than does the statute in *Expressions I*).  Granted, Section 399-zzz prohibits businesses from charging consumers for receiving a paper statement (through which businesses traditionally communicate their prices and provide additional details for the charges).  However, it also expressly provides businesses the option to offer consumers a credit for receiving an electronic statement instead of a paper statement.  This last fact is critical because it expressly permits Defendant to deprive one class of customers (i.e., those who do not receive an electronic statement instead of a paper statement) of a credit given to another class of customers (i.e., those who do receive an electronic statement instead of a paper statement), while restricting Defendant from labeling this deprivation of the credit as a "fee."

---

[6]     The Court notes that Plaintiff also argues that Defendant's First Amendment argument is conditioned on the Court's finding that Defendant is not permitted to charge a fee under Section 399-zzz.  (Dkt. No. 22, at 17-18.)  However, at this stage of litigation, the Court may not, and does not, determine whether Defendant's decision to charge a fee for a paper statement "falls within the OCC's definition of a pricing decision authorized by federal law," or whether Defendant's "internal decision-making processes" complies with "safe and sound banking principles."  *In re HSBC Bank, USA N.A. Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 48 (E.D.N.Y. 2014) (citing 12 C.F.R. § 7.4002[b][2]).  As discussed more thoroughly above in Part III.A. of this Decision and Order, the Court's only appropriate inquiry at this stage of the litigation is whether the state law more than incidentally affects the exercise of Defendant's deposit-taking powers.  *In re HSBC*, 1 F. Supp. 3d at 48 (citing *In re Checking Acct. Overdraft Litig.*, 649 F. Supp. 2d 1302, 1313 [S.D. Fla. 2010]).

For these reasons, construing the statute as a whole, the Court finds that Section 399-zzz, like the law at issue in *Expressions I*, regulates the communication of fees rather than merely the price itself.  137 S. Ct. at 1151; N.Y. Gen. Bus. Law § 399-zzz.

### 2.   Whether Section 399-zzz Survives Intermediate Scrutiny

In the Second Circuit, courts deciding a First Amendment question first analyze "the way the statute operates in practice."[7]  *Expressions Hair Design v. Schneiderman*, 877 F.3d 99, 103 (2d Cir. 2017) ("*Expressions II*").[8]  For commercial speech to be protected under the First

---

[7]      Despite the Supreme Court's guidance regarding a similar statute in *Expressions I*, it remanded the case for further consideration after refusing to determine whether the statute at issue was unconstitutional.  137 S. Ct. at 1151-52.  In response, the Second Circuit sought clarification regarding the scope of the statute at issue and certified the question to the New York Court of Appeals.  *Expressions Hair Design v. Schneiderman*, 877 F.3d 99, 107 (2d Cir. 2017) ("*Expressions II*").  Upon review, the New York Court of Appeals found that a merchant complies with the statute at issue "if an only if the merchant posts the total dollars-and-cents price charged to credit card users."  *Expressions Hair Design v. Schneiderman*, 117 N.Y. 3d 382, 393 (2018) ("*Expressions III*").  Although the Second Circuit has not formally determined which standard to apply as of the date of this Decision and Order, it provided some guidance as to when courts should apply each standard.  *See Expressions II*, 877 F.3d at 103-04 (explaining when to apply the *Central Hudson* or *Zauderer* test).

[8]      The Court notes that Plaintiff also argues that Defendant's interpretation of Section 399-zzz is incorrect and inappropriate.  "Statutory construction 'must begin with the language employed by [the legislature] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'"  *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (quoting *United States v. Albertini*, 472 U.S. 675, 680 [1985]).  "Where the statute's language is 'plain, the sole function of the courts is to enforce it according to its terms.'"  *Kozeny*, 541 F.3d at 171 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 [1989]).  Furthermore, the "whole 'act' rule of statutory construction exhorts [courts] to read a section of a statute not 'in isolation from the context of the whole Act' but to 'look to the provisions of the whole law, and to its object and policy.'"  *Id.* (quoting *United States v. Pacheco*, 225 F.3d 148, 154 [2d Cir. 2000]).  It is only after courts determine that the statute itself is not clear that a "court may consult the legislative history to discern 'the legislative purpose as revealed by the history of the statute.'"  *Id.* (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 627 [1993]).  Although Plaintiff argues that alternative interpretations of the statute are more appropriate, she overlooks the language of the statute as a whole.  In particular, Plaintiff's interpretation ignores the fact that the statute permits "a person, partnership, corporation, association or other business entity [to offer]

Amendment, "it at least must concern lawful activity and not be misleading." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554 (2001) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 [1980]) ("*Cent. Hudson*"). Because commercial speech is inextricably linked with the commercial arrangement that it proposes, "laws restricting commercial speech need only be tailored in a reasonable manner to serve a substantial state interest to survive First Amendment scrutiny. *Edenfield v. Fane*, 507 U.S. 761, 767 (1993) (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 [1989]). In other words, the Court undergoes a four-part test when assessing commercial speech restrictions: (1) whether the expression is protected by the First Amendment (i.e., whether the speech concerns lawful activity and is not misleading); (2) whether the government interest is substantial; (3) if both inquiries are satisfied, whether the restriction directly advances the government interest asserted; and (4) whether the restriction is more extensive than necessary to serve the government interest. *Cent. Hudson*, 447 U.S. at 566; *Vugo, Inc. v. City of New York*, 931 F.3d 42, 51 (2d Cir. 2019).

In this case, both parties agree that the Court should apply the *Cent. Hudson* standard. (Dkt. No. 18, Attach. 1, at 15-17; Dkt. No. 22, at 22-25; Dkt. No. 25, at 11-12.) Because the New York State Attorney General's office elected not to participate in the case, the Court will assume (for the sake of argument) that Plaintiff's proposed state interest (consumer protection) is

---

consumers a credit or other incentive to elect a specific payment or billing option." N.Y. Gen. Bus. Law § 399-zzz(1). Despite the statute's purpose (to prohibit businesses from imposing higher charges or fees on consumers who receive paper statements), the plain language of the statute undermines its application. Specifically, Section 399-zzz does not prohibit businesses from providing a dollar-for-dollar credit, offset, or some other incentive to entice consumers to opt-in to paperless billing. Because the statute does not prohibit such behavior, Plaintiff's interpretation that certain credits or other incentives are not allowed runs contrary to the plain language of the statute. Accordingly, the Court finds Plaintiff's argument unavailing.

the government's interest at issue.  If a business' commercial speech is "tainted by lies, misleading statements, or an illegal purpose, [the speech] may be regulated."  *Safelite Grp., Inc. v. Jespen*, 764 F.3d 258, 264 (2d Cir. 2014) (citing *Cent. Hudson*, 447 U.S. at 563) ("The government may ban forms of communication more likely to deceive the public rather than to inform it . . . .").

Plaintiff argues that the State, pursuant to its police powers, has a substantial interest in protecting its consumers from harmful conduct.  (Dkt. No. 22, at 24.)  The Court agrees.  *See 44 Liquomart, Inc. v. Rhode Island*, 517 U.S. 484, 502 (1996) ("It is the State's interest in protecting consumers from 'commercial harms' that provides 'the typical reason why commercial speech can be subject to greater governmental regulation than noncommercial speech.'") (citing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 426 [1993]).  Because Defendant's communication surrounding fees for paper statements is not protected by the First Amendment, and the government interest qualifies as substantial, the Court must analyze whether the statute directly advances the government interest, and whether it is narrowly tailored in doing so.

Here, the Court finds that Section 399-zzz does not directly advance the State's interest in protecting its consumers from harmful conduct.  Although Section 399-zzz prohibits businesses from imposing charges associated with paper statements on consumers who elect to receive paper statements, the statute does not prohibit businesses from offering "incentives" or "credits" to individuals who choose electronic billing.  N.Y. Gen. Bus. Law § 399-zzz(1).  The statute, then, relies on a semantic distinction between fees and credits, and does not (as a practical matter) prevent businesses from charging customers different rates depending on their choice of paper or electronic statements.  At most, this semantic distinction would have a *de minimis* effect

on consumer choice.  Such a *de minimis* effect on consumer choice is not sufficient to directly advance the State's interest under *Cent. Hudson*.  *Jespen*, 764 F.3d at 265.  Accordingly, the Court finds that Section 399-zzz does not directly advance the State's substantial interest in protecting its citizens from harmful conduct.

In any event, even if the Court were to find that Section 399-zzz directly advances such a substantial State interest, the Court would not find that it is narrowly tailored in doing so. Although Section 399-zzz permits businesses to commit the otherwise-offending practice by "offering consumers a credit or other incentive to elect a specific payment or billing option," it is not entirely clear if such "other incentive[s]" include "refunds," "rebates," and "discounts." Moreover, Section 399-zzz provides, "Every violation of this section shall be deemed a deceptive act and practice . . . ."  N.Y. Gen. Bus. Law § 399-zzz(2).  Simply stated, this blanket penalty, coupled with the vague language "credit or other incentive," could unnecessarily prohibit non-misleading, accurate speech.

Accordingly, for all of these reasons, the Court finds that Section 399-zzz violates the First Amendment and is therefore deemed unconstitutional.

### C.    Whether, in the Alternative, Plaintiff Failed to State a Claim Under Section 349

After carefully considering the matter, the Court answers this question in the affirmative for some of the reasons stated in Defendant's memoranda of law.  (Dkt. No 18, Attach. 1 at 17-21; Dkt. No. 25, at 12-14.)  To those reasons, the Court adds the following analysis, which is intended to supplement, and not supplant, Defendant's reasoning.

Defendant first argues that Section 399-zzz does not apply to national banks because the statute does not specifically mention "national banks" among the list of business entities subject

to the statute.  The Court finds Defendant's argument unpersuasive.  When there "is no statutory definition of a term, [courts] consider 'the ordinary, common-sense meaning of the words.'" *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) (quoting *United States v. Dauray*, 215 F.3d 257, 260 [2d Cir. 2000]).  The language of Section 399-zzz clearly applies to individuals, partnerships, corporations, associations, and other business entities.  N.Y. Gen. Bus. Law § 399-zzz(1).  Additionally, "State law which extends generally to all persons within the State's jurisdiction also regulates the activities of national banks."  *New York v. Calandra*, 164 A.D. 2d 638, 642 (N.Y. App. Div., 1st Dep't 1991).  Because the Court determined that Section 399-zzz is a law of general application above in Part III.A. of this Decision and Order, and that Defendant is an association, the language of Section 399-zzz clearly encompasses Defendant; however, even if Defendant were not an association, the Court would find that Defendant is subject to Section 399-zzz as an "other business entity."[9]

Defendant next argues that Section 399-zzz does not apply to Defendant's paper fee statement policy because the statute concerns a "paper billing statement" "associated with payment on an account" and Plaintiff has not alleged that her paper statement fee was associated with a billing statement from her bank account.  (Dkt. No. 18, Attach. 1, at 18-19.)  Defendant

---

[9]      In support of its position, Defendant argues that New York State courts determined that a New York Banking statute's "definition of a bank" contains no mention of a national bank, the Court should conclude that the New York State legislature acknowledged it was without authority to apply Section 399-zzz to national banks like Defendant.  (Dkt. No. 18, Attach. 1, at 17-18.)  However, Defendant ignores language in the single case it cites in support of its position; specifically, Defendant overlooks the sentence, "Therefore, State law which extends generally to all persons within the State's jurisdiction also regulates the activities of national banks."  *New York v. Calandra*, 164 A.D. 2d 638, 642 (N.Y. App. Div., 1st Dep't 1991).  The Court respectfully cautions Defendant's attorneys to avoid selectively picking language from cases to convey support for a position the case does not stand for, especially when the heart of the case runs contrary to the proposed argument.

also argues that the paper statement fee cannot serve as both the challenged "additional fee" and the "associated [] payment on an account," because it would obviate the requirement for a separate associated payment on the account.  (*Id.*)  Before the Court can answer whether the New York Legislature intended for Defendant's paper fee statements to be within the scope of Section 399-zzz, it must determine the legislative intent behind the phrases "paper billing statement" and "associated with payment on an account."

As previously mentioned, courts "consider 'the ordinary, common-sense meaning of the words,'" to determine legislative intent.  *See Rowland*, 826 F.3d at 108 (quoting *Dauray*, 215 F.3d at 260) (analyzing dictionary definitions of the term "falsify").  However, "[t]he plain meaning 'does not turn solely on dictionary definitions of [the statute's] component words,' but is also determined by 'the specific context in which that language is used, and the broader context of the statute as a whole.'"  *Id.* (quoting *Yates v. United States*, 574 U.S. 528, 537 [2015]).  In this case, *Merriam-Webster Dictionary* defines a "bill," as relevant here, as "an itemized list or a statement of particulars (such as a slit of materials or of members of a ship's crew)" "an itemized account of the separate cost of goods sold, services performed, or work done," and "an amount expected or owed."  *Bill*, Meriam-Webster Dictionary (Feb. 19, 2021) https://www.merriam-webster.com/dictionary/bill.  Although monthly bank account statements are not commonly viewed as the same as credit card or other billing statements, the Court finds that the New York State Legislature nevertheless intended Section 399-zzz to include Defendant's monthly bank statements. [10]  A bill, by definition, is "an itemized account of the

---

[10]     A "statement" is defined as "a summary of activity in a financial account over a particular period of time."  *Statement*, Meriam Webster Dictionary (Feb. 19, 2021) https://www.merriam-webster.com/dictionary/statement.

separate cost of goods sold, services performed, or work done." *Bill*, Meriam-Webster

Dictionary (Feb. 19, 2021) https://www.merriam-webster.com/dictionary/bill.  Here, Defendant's

bank statement lists Plaintiff's deposits, withdrawals, transfers, as well as a maintenance fee and

paper statement fee.  (Dkt. No. 18, Attach. 5, at 5.)  In particular, Defendant's bank account

statement highlights an individual's account activity for the month and outlines the services

performed on behalf of the individual.  (*Id.*)  According to Defendant's own Personal Deposit

Account Agreement, maintenance fees are waived if certain conditions are met.  (Dkt. No. 18,

Attach. 3, at 11, 18-22.)  Because Defendant's billing statement fits the definition of both a

"bill," and the term "statement," the plain language of the statute indicates the New York State

Legislature intended to include Defendant's bank account statement within the scope of Section

399-zzz.

　　　　Turning to Defendant's argument that Plaintiff does not allege a "payment" on her bank

account with which the paper statement fee is "associated" with, the Court disagrees.

Defendant's interpretation of Section 399-zzz unnecessarily reads language into the statute by

requiring a separate associated payment on an account that is distinct from the maintenance of

the account itself.  (Dkt. No. 18, Attach. 1, at 18-19.)  Instead, the plain language of the statute

suggests that businesses cannot charge an additional fee to consumers who receive a paper

billing statement.[11]  N.Y. Gen. Bus. Law § 399-zzz.  Moreover, the Court does not, nor need not,

---

[11]　　Defendant argues that courts within the Second Circuit have recognized that "[t]he
deposit [in a bank account] establishes a debtor-creditor relationship between the bank and the
depositor in which the former becomes indebted to the latter for the amount of the deposit." *In
re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 328 (S.D.N.Y. 2010).  Although New York law
presumes a debtor-creditor relationship, Defendant's citations miss the mark. *In re Refco Sec.
Litig.*, 759 F. Supp. 2d at 328.  Specifically, *In re Refco Sec. Litig.*, evaluates whether a bank or
brokerage firm enters into a debtor-creditor, or bailor-bailee relationship when an individual

compare Plaintiff's bank statement with an account that does not charge a maintenance fee because of Defendant's Personal Deposit Account Agreement.  (Dkt. No. 18, Attach. 3.)  Specifically, Defendant's agreement details the nature of the maintenance fee, and when it applies to an individual's account.  Thus, this maintenance fee is a "payment for an account" with Defendant's bank.  Accordingly, the plain language of the statute includes the payment on Defendant's bank accounts.  Based on the above, the Court finds that the New York State Legislature intended to apply Section 399-zzz to national banks, including Defendant.

Finally, Defendant argues that Plaintiff has failed to plead a separate violation of Section 349 because there is no underlying violation of Section 399-zzz.  (Dkt. No. 18, Attach. 1, at 20-21.)  To establish a violation of Section 349, "'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered an injury as a result of the allegedly deceptive act or practice.'"  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y. 3d 940, 940 [2012]).  In this case, Plaintiff alleges that Defendant's paper statement fee amounts to a violation Section 349 because the New York State Legislature indicated that a violation of Section 399-zzz would be deemed a deceptive act and practice.  N.Y. Gen. Bus. Law § 399-zzz(2).  However, Plaintiff has failed to state a claim for a deceptive act and practice because Section 399-zzz unconstitutionally infringes on Defendant's First Amendment rights.

---

deposits money within that institution.  *Id.* at 328-30.  The Court finds that, even if a debtor-creditor relationship existed between Plaintiff and Defendant, Defendant's charges for services performed would nevertheless amount to a billing statement (regardless of whether Defendant is the debtor or creditor).

For this reason, the Court finds that Plaintiff's Complaint must be dismissed for failure to state a claim.

Finally, some discussion is appropriate regarding the nature of the dismissal in this action.  Ordinarily, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted).[12]  "[A]n opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile."  *Sorrentino v. Barr Labs. Inc.*, 09-CV-0591, 2010 WL 2026135, at *5 (May 20, 2010 N.D.N.Y.) (Suddaby, C.J.)  Because the Court has determined that Section 399-zzz unconstitutionally infringes on Defendant's First Amendment rights, it has

---

[12]       *Accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (finding that denial was not an abuse of discretion where an amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").  The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  The problem with these cases is that their "rule out any possibility, however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  *See Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (relying on *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]).  Thus, this standard does not appear to be an accurate reflection of the leave to amend guidelines under the current "plausibility standard."  *Aschcroft v. Iqbal*, 556 U.S. 662 (2009).

no choice but to dismiss Plaintiff's claim against Defendant with prejudice.  Even if this were not

the case though, the Court would find that the other pleading defects in Plaintiff's detailed

Complaint, which was drafted with the assistance of counsel, are substantive and not merely

formal.

      **ACCORDINGLY,** it is

      **ORDERED** that Defendant's motion to dismiss (Dkt. No. 18) is **<u>GRANTED</u>** and it is

further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>** **with prejudice**.

Dated: March 16, 2021
      Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge